```
                  UNITED STATES DISTRICT COURT

                 FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - x
                                 :
KIM E. VERA AND                  :  No. 3:16CV72(RNC)
 STEVEN L. VERA,                 :
                                 :
            Plaintiffs,          :
                                 :
         vs                      :
                                 :
LIBERTY MUTUAL FIRE              :
  INSURANCE COMPANY,             :
                                 :  HARTFORD, CONNECTICUT
              Defendant.         :  JANUARY 3, 2018
                                 :
- - - - - - - - - - - - - - - - x


                     TELEPHONE CONFERENCE


     BEFORE:

            HON. ROBERT N. CHATIGNY, U.S.D.J.



 APPEARANCES:

    FOR THE PLAINTIFFS:

            TOLISANO & DANFORTH LLC
                P.O. Box 676
                Ellington, Connecticut 06029
            BY: BRIAN D. DANFORTH, ESQ.

    FOR THE DEFENDANT:

            HOWD & LUDORF
                65 Wethersfield Avenue
                Hartford, Connecticut 06114-1190
            BY: KIERAN W. LEARY, ESQ.
                PHILIP T. NEWBURY, JR., ESQ.


                                   Darlene A. Warner, RDR-CRR
                                   Official Court Reporter
```

2:00 P.M.

THE COURT: Good afternoon. This is oral argument on the motion for summary judgment in the case of Vera v. Liberty Mutual Fire.

MR. DANFORTH: Good afternoon, Attorney Brian Danforth for the plaintiffs.

MR. LEARY: Good afternoon, Your Honor, Kieran Leary on behalf of Liberty Mutual Fire Insurance Company.

THE COURT: I've read your papers and I've looked at the cases. I want you to know that I'd be happy to hear from both of you with regard to anything that you would like to say this afternoon, and I don't want to preempt any presentation that you might have prepared or would like to make, but I will tell you that one of the questions in my mind is whether, all things considered, it would make sense for me to certify one or more questions to the Connecticut Supreme Court.

MR. LEARY: And, Your Honor, if I could address that?

Judge Underhill, recently we had a summary judgment hearing, me and plaintiff's counsel, Jeffrey Lindquist, and he actually off the record encouraged us to move for certification of questions to the Supreme Court

1     including what substantial impairment of constructional

2     integrity constitutes under law.

3          We filed those papers last week and plaintiff's

4     response is due on January 10.  Obviously I'm strongly in

5     favor of certification to resolve what substantial

6     impairment of structural integrity means to see if a loss

7     exclusion within the collapse provision at issue in this

8     case would exclude this sort of claim for the loss on the

9     foundation which didn't result in a collapse of a

10    building.

11         I'd be happy to file a certification briefly

12    requesting it aside from just orally stating the issues.

13    But I'd also note -- and if I'm getting ahead of myself,

14    please let me know.

15         I'd also note this case is different from other

16    ones in the fact that the plaintiff's engineer seems to

17    agree that there hasn't been a substantial impairment of

18    structural integrity.  There doesn't just need to be

19    cracks in the wall, but when there's no bowing or bulging

20    to the wall, when there's no damage to the area above it,

21    when he describes the cracks as hairline cracks, there's

22    no cracking on the exterior, you don't get coverage for,

23    you know, a mineral which could potentially cause a loss

24    down the line and have an engineer, who's admittedly not a

25    chemist, has no idea about the reports he's reading and

1    has testified as to not having or understanding the
2    science behind these reactions, I'd say the plaintiff's
3    lawsuit in this case is premature and certification I
4    think is a good idea.
5            But I also think in this particular
6    circumstance, given the benign nature of the claim damage
7    of the house, that Liberty also is entitled to prevail in
8    this case as to the breach of contract count.
9            I think the plaintiffs are bringing suit for a
10   chemical reaction, not a loss caused by a chemical
11   reaction, and I'd be happy to expound further on my
12   arguments, but as per the certification, I'm sure Brian
13   disagrees as to my interpretation.  I'll let him have the
14   floor for the time being.
15           THE COURT:  Thank you.
16           MR. DANFORTH:  Good afternoon, Your Honor.
17           As far as certifying certain issues to the
18   Court, I would actually prefer something like that.  I
19   have about 200 to 300 clients that deal with this issue,
20   Your Honor.
21           You and I were on the phone a couple weeks ago
22   about Lackouskas and we get three to five every single
23   week.  I must have responded to 25 to 30 motions for
24   summary judgments and motions to dismiss since August.
25   I'm tired, to say the least.

1              I would welcome some sort of resolution to this,
2    positive or negative.  At least my clients know one way or
3    the other, and as much as I like taking their money -- I
4    really don't, I say that tongue in cheek.  This isn't
5    solving their problem.  It's a terrible, terrible problem.
6              One of my clients didn't file suit, he is a
7    prison guard.  The poor man was just to tears, from the
8    last person in the world that you would expect to see it,
9    and I see it every day.  It's taking its toll.
10             As far as the whether the Veras in this
11   particular case would want to have me endeavor on some of
12   these issues and appeal them, I would have to discuss that
13   with them because this is a very expensive process and
14   it's not an easy one and I don't take what I do lightly.
15             In the time I spend, I'm very -- I try to be as
16   frugal as possible and do the best I can.
17             So there's more issues on our standpoint in
18   appealing it, rather than just simply agreeing with you.
19   We agree with Liberty these issues should be resolved at a
20   different level so we all know what to do with them.  But
21   I also have to figure in what my clients think of that.
22             With respect to Attorney Leary's comments about
23   this one isn't as serious as the rest or we're not
24   experiencing any problems, I think it was -- I actually
25   took a long time to read the Roberts decision over the

1   past few days, which I know you're aware of because I need
2   to write you a letter in a day or two about it on the
3   Lackouskas case.
4           The report is Exhibit 46-3 -- let me find it
5   here -- I'm saving some trees, Your Honor.
6           If you go to 46-3, page 2, which is the report
7   which started this whole thing by Mr. Neal, who he's
8   referring to, he says, and I quote, "This is a chemical
9   reaction between alkali aggregate and a silica in the
10  concrete mix.  It typically causes this type of distress
11  to be visible 15 to 20 years after the foundation is
12  poured and is very likely the ASR will continue to
13  deteriorate the concrete and the basement walls will begin
14  to bulge inward until they structurally fail.  There is no
15  way to arrest the process and there is no way to repair
16  the existing damage.  The basement walls at this time are
17  beginning to lose their structural integrity and
18  corrective action is necessary."
19          We'll skip down.
20          "It is my recommendation that the basement walls
21  be replaced."
22          I think that very language within the report
23  that started this whole thing is the center of the whole
24  Roberts decision.
25          I think even Judge Underhill at some point says

1   in the Roberts decision, hey, it doesn't matter if it's
2   tiny little cracks, the problem is that it's going to fall
3   down is what the problem is.  And that's why the Roberts
4   decision, which I believe is the case you're talking about
5   certifying, if I'm not mistaken, he allowed that one to
6   continue on and is supposed to go to trial in a month or
7   two, if I'm not mistaken.
8              So that's my only point I have with regard to
9   what Attorney Leary says.  If he doesn't think my witness
10  is qualified, that's why we have a jury box on this and
11  this Court will decide whether or not he can testify to as
12  to that.
13             That's all I have to say about that, Your Honor.
14  Thank you, Your Honor.
15             THE COURT:  Thank you.  I appreciate your
16  thoughts.
17             From my perspective, the best way to proceed for
18  all concerned would be to get this in front of the
19  Connecticut Supreme Court as soon as possible and in a
20  manner that would allow the Court to resolve as much of
21  the legal uncertainty as possible.
22             The certification process entails -- well, let
23  me ask:  Have you ever been through this process before;
24  either one of you?
25             MR. LEARY:  I have not been through it yet, Your

1   Honor.

2   THE COURT:  Okay.

3   MR. DANFORTH:  As far as -- I've been before the
4   Appellate Court and what have you, but as far as the
5   certification from a federal to a state, if there's
6   something different, I have to admit, I'm not aware of it,
7   Your Honor.

8   THE COURT:  Well, the Second Circuit has
9   encouraged district judges to certify unsettled issues of
10  state law to the highest state court when an authoritative
11  resolution of the issue will dispose of the case; and if
12  it's a recurring issue, one that is apt to dispose of
13  other cases, then all the more reason to go ahead and
14  certify.

15  The Connecticut Supreme Court welcomes such
16  certification and endeavors to schedule the argument as
17  soon as possible and also endeavors to issue a decision as
18  soon as possible.

19  So I think certification has a lot to offer the
20  people who are affected by this very unusual and very
21  difficult problem.

22  I would invite you to consult with your clients,
23  of course, and get back to me with your positions.  I
24  didn't know that Judge Underhill had raised the
25  possibility.  I don't know that it makes sense to have

1	more than one case certified.  I suppose it's possible
2	that the Vera case would be appropriate for certification
3	of a question that might not be available in the Roberts
4	case or might be appropriately certified along with
5	whatever question might be certified in the Roberts case.
6	            My point being, I'm not by any means insisting
7	that we certify here, but I do think we should try our
8	best to see to it that this is certified by somebody, and
9	if not here, then maybe in Judge Underhill's case.
10	            But Mr. Danforth, I can well understand how
11	difficult a situation this is for people, and if the Veras
12	don't want to be part of a certified appeal, then so be
13	it.
14	            But may I ask you to please consult and get back
15	to me and let me know?
16	            MR. LEARY:  Yes, Your Honor.  And I can tell
17	you, before I even spoke, I would wholeheartedly encourage
18	certification of this.
19	            It was actually broached with Judge Underhill on
20	Roberts.  He ultimately decided not to certify the issue.
21	            I spoke with him off the record after a hearing
22	in Karas with opposing counsel where Judge Underhill
23	encouraged me to renew my -- ask for certification,
24	thought it was a good idea, believed that he may have
25	waited a little too long in the Roberts decision, and

1   that's why he ultimately decided not to certify.

2          He was surprised that -- because it was about
3   nine months later that he issued his summary judgment
4   ruling -- he was surprised that the issue hasn't gone up
5   on appeal yet, that all of these cases are still pending.
6   Now we have all these trials that -- I myself have about
7   nine or ten trials on this particular issue that are
8   scheduled over the next two or three months.

9          I just filed our certification brief in a case
10  called Karas before Judge Underhill, and the issues which
11  we've requested is -- which we've requested are:

12         Number one:  Is substantial impairment of
13  structural integrity the applicable standard under this
14  policy language.  Because the language of this policy is
15  markedly different from that of the Beach case.  In fact,
16  Beach case encouraged us to use this language if we wanted
17  to exclude a loss of a much larger magnitude than what
18  we're facing here.

19         In the Beach case, we had a wall that had a
20  9-inch crack that continued to expand, the house was
21  tipping over into the basement, it was in imminent danger
22  of falling over, they had to make immediate repairs to
23  avoid that collapse.

24         My honest reading of Beach, not simply as an
25  advocate for Liberty, is that there's' an imminency

1    component to a substantial impairment analysis and that's
2    wholly lacking in any of these cases and most pronouncedly
3    lacking in this case.
4             So I don't believe the policy language at Beach
5    is anywhere close to this language.  I don't think Beach
6    controls this case because of the difference.
7             A cited a case called Tuscan Fields from
8    California where a California court decided substantial
9    impairment of structural integrity is not the applicable
10   standard under the policy language at issue in this case.
11            However, a second question I asked is that -- or
12   proposed to ask of the Supreme Court was:  In the event
13   that Beach controls, a substantial impairment of
14   structural integrity is the standard, what constitutes a
15   substantial impairment of structural integrity?
16            Washington faced the same issue and they
17   certified the issue to the Washington Supreme Court.  And
18   they said that it's a building in imminent danger of
19   falling over and it's unsafe, unfit for its function, and
20   that would preclude every case I'm aware of, and I'm
21   counsel for Liberty in a number of these -- dozens of
22   them.
23            And the third issue we've asked is:  If Beach
24   controls this particular policy language, does the
25   exclusion within the collapse provision for loss through

1    foundations or retaining walls, unless it's a collapse of
2    a building, would that preclude coverage even if these
3    walls could as a question of fact be substantially
4    impaired because the claim loss is to a foundation and/or
5    a retaining wall and not due to collapse of a building.
6              And those are issues that we've asked to be
7    certified.  I'd be happy to consult with Brian.  Maybe we
8    can stipulate, if his clients want to go forward, to
9    propose questions that we'd be interested in having asked.
10   But I think those are really dispositive of the issues in
11   dozens of pending cases.
12             THE COURT:  Thank you.  I think those questions
13   make sense.  From what I know and from what you have said,
14   I think it would be very helpful to all concerned if the
15   Connecticut Supreme Court could address those questions.
16   I think that the only factor that cuts against
17   certification is the possibility that resolution of the
18   certified question would not in fact resolve the case.
19             So, for example, if the Veras had a claim for
20   coverage, even if they lost on all these questions that
21   you've just summarized, then the Connecticut Supreme Court
22   would be less apt to certify.  They would look for,
23   potentially anyway, a case in which there was no such
24   separate issue.
25             MR. LEARY:  Yes, Your Honor, if I could -- I

1  didn't mean to interrupt.
2              THE COURT: Right. I don't want to give you the
3  impression that I'm an expert on certification and I'm
4  fully familiar with all the nuances of certification,
5  because that's not so. I've only certified a question to
6  the Supreme Court in one previous case.
7              I will tell you that it went very well, that the
8  parties were very pleased with the process. They got a
9  prompt hearing from the Connecticut Supreme Court and a
10 prompt ruling, and it was authoritative, and that was a
11 good experience.
12             But I just want you to know that certification
13 may not be available if it appears to the Connecticut
14 Supreme Court that no matter what it says the case is
15 going to continue.
16             MR. LEARY: Yes, Your Honor.
17             And to that fact, and I think Brian would agree
18 with me on this, there's pretty persuasive authority in
19 the trial courts at both the state and federal level in
20 Connecticut that in the absence of coverage attaching for
21 these kind of claims, under the collapse provision,
22 they're excluded by common policy exclusions, faulty,
23 inadequate or defective materials or cracking, bulging and
24 expansion of foundations.
25             So there's a case, Kim, where summary judgment

```
 1    was granted for Allstate based on faulty materials
 2    exclusion.  And there's a state court case, Musgrave in
 3    which the same result happens.
 4             So I think resolution of this would be
 5    dispositive of all issues in this case and there's not
 6    some fallback coverage provision which could attach and
 7    provide the Veras with an avenue to recover from Liberty.
 8             THE COURT:  Okay, thank you.
 9             Well, then, why don't we leave it this way:  You
10    will talk and consult your clients and talk again and get
11    back to me and let me know what you would like to do.  It
12    could be that if we have certification here, it would be
13    possible for other pending actions in this court to be
14    stayed so that if you do have briefing on motions to
15    dismiss or for summary judgment or trials scheduled, it's
16    possible that those cases could wind up being stayed
17    pending a ruling by the Supreme Court.
18             Again, I don't know, but I'm raising that as a
19    possibility so you can factor that into your thinking.
20             MR. LEARY:  Yes, Your Honor and we'll talk to
21    our clients.
22             Would you like us to set some sort of deadline
23    to get back to the Court?
24             I already filed our motion for certification in
25    Karas a couple weeks ago.  So the questions I just
```

1   mentioned, I've already briefed that issue, so I could
2   file that even sometime this week if Brian were in
3   agreement.  Maybe we could do it as a joint motion for
4   certification once he has a chance to speak with his
5   clients.
6           MR. DANFORTH:  I just need some time with my
7   clients.
8           I would recommend it.  I would highly recommend
9   it, but it's ultimately up to them.
10          THE COURT:  Okay.  Let me ask you two to confer
11  and let the clerk know when we should expect to hear from
12  you, and that will be fine, okay?
13          All right, thank you for coming in.
14          MR. DANFORTH:  Thank you, Your Honor.
15          MR. LEARY:  Thank you, Your Honor.
16          THE COURT:  Good luck with the weather forecast.
17          MR. LEARY:  The only other issue I'd speak of
18  and Brian brought this to my attention, Your Honor, I
19  believe we have a trial date in March that would also
20  encompass preparing a joint trial memo.  Should we stay
21  that?
22          THE COURT:  Yes, yes.
23          MR. DANFORTH:  Thank you, Your Honor.
24          MR. LEARY:  Thank you, Your Honor.
25          THE COURT:  Thank you.

1                    (Proceedings adjourned at 2:27 p.m.)
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

(Proceedings adjourned at 2:27 p.m.)

1              C E R T I F I C A T E

2

3         In Re: VERA vs. LIBERTY MUTUAL FIRE

4

5

6         I, Darlene A. Warner, RDR-CRR, Official Court

7   Reporter for the United States District Court for the

8   District of Connecticut, do hereby certify that the

9   foregoing pages are a true and accurate transcription of

10  my shorthand notes taken in the aforementioned matter to

11  the best of my skill and ability.

12

13

14

15
                  /s/_____
16
                  DARLENE A. WARNER, RDR-CRR
17                  Official Court Reporter
                  450 Main Street, Room #223
18                Hartford, Connecticut 06103
                       (860) 547-0580
19

20

21

22

23

24

25